UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| TAFT A. MCKINSTRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 10-110-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| HAROLD E. SERGENT, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff trustee's trust is designed specifically to wind up the extinct debtor's affairs in the aftermath of its bankruptcy, including its causes of action. In fact, some of the causes of action here were specifically assigned to the trust to pursue on behalf of the debtor's unsecured creditors. And *all* of the causes of action seek to redress conduct that purportedly led to the debtor's bankruptcy or occurred in the context of the bankruptcy. These claims therefore "relate to" the underlying bankruptcy case, and so the Court has the jurisdiction necessary to refer this case to the bankruptcy court.

## BACKGROUND

Harold Sergent was the founder of both the Black Diamond coal company and Global Energy Holdings. R. 1, Attach. 1 ("Complaint") at 7, 11. Some time in 2006, he caused the former to enter a Consulting and Sales Agreement with the latter. Under that agreement, Black Diamond agreed to pay Global Energy $.25 per ton of coal Black Diamond mined or sold, with a minimum monthly payment of $30,000. *Id.* at 11. And in May of that same year, Sergent purportedly led Black Diamond to enter a Royalty Agreement with one of its lenders, under

which the lender would receive a $.13 royalty for every ton of coal mined or sold. *Id.* at 12. Sergent himself would receive $.04 of that per-ton royalty. *Id.* Succumbing to the consequent incentive to produce or sell a lot of coal, Sergent then allegedly committed to sell more coal than Black Diamond could possibly produce—leading to Black Diamond's financial troubles. *Id.*

The lender, CIT, insisted that Black Diamond retain Alvarez & Marsal North America, LLC, as a financial advisor. *Id.* at 14. But the company's financial condition continued to worsen, and CIT joined others to file involuntary Chapter 11 petitions against Black Diamond. *Id.* at 14. At the urging of CIT, the bankruptcy court then appointed two A&M representatives, Ira Genser and Larry Tate, as the company's Chief Restructuring Officer and Chief Financial Officer. *Id.* at 14-15. In furtherance of their duties, the appointees secured the bankruptcy court's permission to reject the Sales Agreement and Royalty Agreement, prompting Sergent to file a proof of claim for damages suffered as a result—entering a new role as a Black Diamond creditor. R. 44 at 9. The Trustee nevertheless claims that the A&M defendants mismanaged Black Diamond and oversaw its eventual financial destruction. *See* Complaint at 15-24.

The unsecured creditors pursued claims against Harold Sergent and the A&M defendants. To permit confirmation of a bankruptcy plan, the unsecured creditors and the A&M defendants entered a settlement agreement, and the claims against the A&M defendants were to be assigned to an Unsecured Creditors Trust. R. 26, Attach. 1 at 4. The bankruptcy plan incorporated this agreement, R. 26, Attach. 2 at 137, further transferred all the unsecured creditors' other "rights, title and interest in the Contributed Assets" to the trust—including potential claims against

- 2 -

Sergent, *see* R. 44 at 10; R. 26, Attach. 2 at 76, and purported to "retain such jurisdiction over [the case] . . . as is legally permissible," R. 26, Attach. 2 at 152.

The plaintiff filed a complaint in state court lodging several claims against the A&M defendants and Harold Sergent relating to their management of the Black Diamond business. The A&M defendants removed the entire "action" to this Court, R. 1, and Harold Sergent joined, R. 55. The plaintiffs filed a motion to remand or abstain. R. 26. The defendants ask the Court to either deny the motion or refer it to the bankruptcy court.

## DISCUSSION

The Court's initial inclination was to resolve this motion to remand rather than refer it to the bankruptcy court. But a closer look reveals difficult issues which the bankruptcy court's familiarity with the case may help resolve: For example, consider the plaintiff's non-jurisdictional argument that the Court must abstain under 28 U.S.C. § 1334(c)(2) from hearing the state law claims against Harold Sergent. *See Robinson v. Mich. Consol. Gas Co., Inc.*, 918 F.2d 579, 584 (6th Cir. 1990) ("Mandatory abstention under section 1334(c)(2) is not jurisdictional[.]"); Fed. R. Bankr. P. 5011, Comment (b) ("The bankruptcy judge ordinarily will be in the best position to evaluate the grounds asserted for abstention."); *Navon v. Mariculture Prods. Ltd.*, 395 B.R. 818, 822-23 (D. Conn. 2008). To decide whether it must abstain, the Court has to determine (among other things) whether those claims are "core" bankruptcy claims—claims over which the bankruptcy court is at the height of its power. In turn, whether those claims are "core" depends largely on whether their resolution could impact the process for administering Sergent's own claim against the estate in his alternate role as a creditor. 28 U.S.C.

§ 157(b)(2)(B).  As a newcomer to this case, it is hard for the Court to tell.  Perhaps the bankruptcy court has a clearer picture.[1]

## I.      This Court must confirm its own jurisdiction before referring the case to the bankruptcy court

Yet the Court must confirm its own jurisdiction before sending it to bankruptcy. *Muratore v. Darr*, 375 F.3d 140, 147-48 (1st Cir. 2004) (holding that district courts cannot refer cases to bankruptcy court if the district court lacks subject matter jurisdiction).  And not just because Fed. R. Civ. P. 12(h)(3) says that the Court "must dismiss" a case over which it lacks subject matter jurisdiction.  *Id.*  The bankruptcy court itself has no jurisdiction unless this Court has jurisdiction first:  Congress has vested bankruptcy jurisdiction in the district courts—saying "the *district courts* shall have original and exclusive jurisdiction of all cases under title 11" and that "the *district courts* shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(a), (b) (emphasis added).  The bankruptcy court thus only has jurisdiction on discretionary referral from this Court.  *In re Pioneer Inv. Servs. Co.*, 946 F.2d 445, 448 (6th Cir. 1991) ("[T]he Code grants broad jurisdictional powers to Article III district courts, and these courts have discretion to exercise this jurisdiction or refer the case or proceeding to the bankruptcy courts."); *In re Long*, 43 B.R. 692, 697 (Bankr. N.D. Ohio 1984) ("The bankruptcy court acquires jurisdiction over an action only by referral from the district court.").

---

[1]      Of all the issues raised in the motion, the Court has decided only those addressed in this opinion.  Its prior discussions with the parties about the other issues—including whether it has core jurisdiction over either defendant—are in no way binding on the bankruptcy court.

Confirming the need to decide this Court's jurisdiction first is the text of the referral statute. To begin, it says that district courts can only refer cases that arise under one of the three categories of bankruptcy jurisdiction—that is, proceedings "arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a); *cf. Marotta Gund Budd & Dzera, LLC v. Costa*, 340 B.R. 661, 663 (D.N.H. 2006) (holding that district court must confirm its own jurisdiction first because the local referral rule authorized "referring [only those] cases which meet the standard for subject matter jurisdiction under section 1334(b)"). These jurisdictional prerequisites distinguish the bankruptcy referral statute from the magistrate judge referral statute—suggesting the Court does not enjoy the same broad discretion to refer matters to bankruptcy courts that it has with magistrate judges. *In re JMP-Newcor Int'l, Inc.*, 225 B.R. 457, 460 (Bankr. N.D. Ill. 1998) (citing 28 U.S.C. § 636). Underscoring this fact is the magistrate referral statute's allowance for reports and recommendations on discreet issues (jurisdictional or otherwise), a feature noticeably absent from the bankruptcy statute. *Id.*

Sure, other courts do not see it this way. Some simply refer cases to bankruptcy as a matter of course, *see, e.g., Mkt. St. Props. Palm Beach, LLC v. Nola Dev. Partners, LLC*, No. 10-00951, 2010 WL 2696848, at *1-2 (E.D. La. July 1, 2010); *Jenkins v. Oakhurst Dev., LLC*, No. 09-00282, 2009 WL 1473960, at *1-2 (S.D. W.Va. May 22, 2009), apparently on the theory that 28 U.S.C. § 157(b)(3) requires that bankruptcy courts play an important (perhaps mandatory) role in the initial jurisdictional determination, *see Mkt. St. Props.*, 2010 WL 2696848 at *1; *MD Acquisition, LLC v. Meyers*, No. 08-494, 2009 WL 466383, at *4-5 (S.D. Ohio Feb. 23, 2009). As they note, § 157(b)(3) says the bankruptcy judge "shall determine" whether a case

- 5 -

is a "core" proceeding—more specifically, a matter that bankruptcy courts can both finally resolve and over which they can exercise jurisdiction because it "arises under" Title 11 or "arises in" a case under title 11. 28 U.S.C. § 157(b)(1); *Browning v. Levy*, 283 F.3d 761, 772-73 (6th Cir. 2002). But the requirement that a bankruptcy judge determine whether a proceeding is "core" is not the same as requiring him to decide whether he has jurisdiction. After all, bankruptcy courts also have jurisdiction over "non-core" proceedings which are still "related-to" a case under title 11. 28 U.S.C. § 157(c)(1). *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) ("In non-core proceedings that are 'related to' the bankruptcy case, the bankruptcy judge may hear the matter and 'submit proposed findings of fact and conclusions of law to the district court[.]'").

Thus, § 157(b)(3) does not pass the jurisdictional buck to bankruptcy court. Rather, it merely instructs bankruptcy judges to decide whether a proceeding is "core" because that determination affects the "scope of [their] authority." *Kennilworth Partners II LP v. Crisman*, No. 00-3218, 2001 WL 30534, at *2 (N.D. Cal. Jan. 3, 2001). That is, bankruptcy courts must determine whether a proceeding is "core" or "non-core" because the designation determines whether they can issue final judgments and orders or merely submit proposed findings of fact and conclusions of law. *Id.* (citing 28 U.S.C. §§ 157(b)(1) and (c)(1)).

In response, defendant Harold Sergent argues that most courts allow parties to remove bankruptcy cases directly to bankruptcy courts—the implication being that if cases can be removed directly to bankruptcy court, there is no reason this Court could not simply refer the matter there automatically. R. 44 at 4. This is indeed a common practice. *See, e.g., In re*

*Stewart*, 62 F. App'x 610, 611-12 (6th Cir. 2003); *In re Wheland Foundry, LLC*, No. 06-10904, 2007 WL 2934869, at *1 (Bankr. E.D. Tenn. Oct. 5, 2007); *In re Eyecare of S. Cal.*, 258 B.R. 765, 768 (Bankr. C.D. Cal. 2001). Courts defending it reason that, even though the bankruptcy removal statute authorizes removal only to the "district court," 28 U.S.C. § 1452(a), bankruptcy courts are still "units" of the district court. *In re Gianakas*, 56 B.R. 747, 750-51 (N.D. Ill. 1985); *In re AG Indus., Inc.*, 279 B.R 534, 538 n.1 (Bankr. S.D. Ohio 2002). In fact, these courts continue, the Federal Rules of Bankruptcy Procedure purportedly require notice of removal to be filed with the bankruptcy clerk. *In re Donoho*, 402 B.R. 687, 692 (Bankr. E.D. Va. 2009). And they add that parties routinely file bankruptcy petitions directly in bankruptcy, notwithstanding § 1334's grant of original jurisdiction to district courts. *Id*. at 692-93.

These are all fair points. But the theory supporting direct removal—and, by extension, automatic referral—is a stretch. Bankruptcy courts only have jurisdiction upon discretionary referral from district courts. A case that begins in bankruptcy court is "on discretionary referral" from the district court in only the technical sense, though it is true the district court is free to then withdraw the "referral." More importantly, the Court is hesitant to read 28 U.S.C. § 1452(a)'s requirement that parties remove to the "district court" to authorize removal directly to bankruptcy courts because an earlier version of the statute expressly permitted just that—an allowance that was changed as part of an effort to reign in the independence of Article I bankruptcy courts. *See Sharp Elecs. Corp. v. Deutsche Fin. Servs. Corp.*, 222 B.R. 259, 261 (Bankr. D. Md. 1998). With the grounds for summarily referring this matter so infirm, the more prudent course is to determine whether this Court has jurisdiction first.

- 7 -

## II.   This Court has jurisdiction and can thus refer the case to the bankruptcy court

The key question, then, is whether the Court has bankruptcy jurisdiction over these claims.  Recall that there are three types of matters over which the Court has jurisdiction—core matters "arising under" title 11, core matters "arising in" a case under title 11, or non-core matters "related to" a case under title 11.  28 U.S.C. § 1334(b).  Any one of these will suffice to permit referral to the bankruptcy court.[2]

### A.   The plaintiff's claims are "related to" the underlying bankruptcy cases for purposes of 28 U.S.C. § 1334

At the very least, the Court has jurisdiction insofar as these claims are "related to cases under title 11."  28 U.S.C. 1334(b).  Though it has not addressed the scope of related-to bankruptcy jurisdiction where, as here, the bankruptcy court has already confirmed the final bankruptcy plan and thus largely played its part, the Sixth Circuit has nonetheless held that the "related to" clause is a "broad" basis for jurisdiction.  *In re Salem Mortg. Co.*, 783 F.2d 626, 633-34 (6th Cir. 1986).  It empowers courts to "deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates."  *In re Boston Reg'l Med. Ctr.*, 410 F.3d 100, 105 (1st Cir. 2005) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  The unqualified breadth of the phrase "related to"—a phrase elsewhere used to denote supplemental

---

[2]      Even though Harold Sergent is a Kentucky citizen, the defendants alternatively argue that this case is properly before the Court upon removal under 28 U.S.C § 1441 because Sergent was fraudulently misjoined.  Not so.  The claims against both A&M and Sergent "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and have "question[s] of law or fact" in  common," Fed. R. Civ. P. 20(a)(2); Ky. R. Civ. P. 20.01:  That is, the plaintiff alleges that mismanagement by both the A&M defendants and Sergent—whose time at Black Diamond overlapped—resulted in destruction of the company, and the fact-finder will necessarily need to consider evidence against both to apportion fault.

- 8 -

jurisdiction—might even suggest that it is as broad a grant of supplemental jurisdiction as Congress can constitutionally give. *See* Susan Block-Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis*, 62 Fordham L. Rev. 721, 779-80, 784-85 (noting that "related to" jurisdiction might be a form of supplemental jurisdiction because "related to" frequently denotes supplemental jurisdiction, and explaining that the limit on the exercise of "related-to" jurisdiction may be the constitutional "same case or controversy" test). And these claims fit comfortably into that broad "related to" universe for several reasons. First, "[t]o a certain extent" the trustee's litigation trust by its "nature maintain[s] a connection to the bankruptcy even after the plan has been confirmed," *In re Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004), because its "sole purpose is to wind up [the debtor's] affairs, convert its assets to cash, and pay creditors a pro rata dividend," *In re Boston Reg'l*, 410 F.3d at 106. Second, "whether or not [the trustee] prevails will directly affect the amount of the liquidating dividend paid to" the creditors whom the trust represents. *Id.* at 105; *see also In re Highway Equip. Co.*, No. 94-3372, 1995 WL 490125, at *4 (6th Cir. Aug. 15, 1995) (per curiam) (citing *Celotex Corp. v. Edwards*, 115 S. Ct. 1493, 1499 (1995)). Third, these disputes are not merely ancillary matters that arose after confirmation of the bankruptcy plan. *See Resorts Int'l*, 372 F.3d at 163, 169-71 (3d Cir. 2004) (rejecting argument that collateral claim that arose post-confirmation was related to the bankruptcy). Rather, these claims concern pre-petition and mid-bankruptcy conduct. And, at least with respect to the A&M defendants, the plaintiff's claims materialized in the context of the bankruptcy—specifically assigned to the trust for post-confirmation resolution. *See* R. 34, Attach. 7 at 5; *In re Highway*

- 9 -

*Equip. Co.*, 1995 WL 490125, at *4 (holding that claims that arose "in the context" of bankruptcy were "related to" a case under title 11 even though they were litigated post-confirmation).  Few claims could relate more closely to the bankruptcy.

### B.    Other courts' narrow view of "related-to" jurisdiction and post-confirmation jurisdiction are no cause for concern here

The Seventh Circuit, which disagrees with the Sixth's broad reading of related-to jurisdiction, might object to this conclusion.  *In re Xonics, Inc.*, 813 F.2d 127, 131 n.2 (7th Cir. 1987).  In its narrow view, bankruptcy courts' jurisdiction "extends no farther" than "dealing with all claims to the bankrupt's assets."  *Id.* at 131.  Related-to jurisdiction, it says, is available only for matters that affect the amount of property available for distribution or the allocation of property among creditors.  *Id.*  And bankruptcy jurisdiction lapses, the *Xonics* court says, "when property leaves the estate."  *Id.*  Read strictly, this could mean there would be no bankruptcy jurisdiction where, as here, the bankruptcy court has confirmed the plan and the estate technically ceases to exist.  *See In re Resorts Int'l*, 372 F.3d at 165-66.

This position is no cause for concern here.  First, it is unclear why the Seventh Circuit takes such a constricted view of bankruptcy jurisdiction.  It is possible the decision turned on an earlier version of the statute, *see In re Xonics,* 813 F.2d at 131 (citing *In re Paso del Norte Oil Co.*, 755 F.2d 421, 424 (5th Cir. 1985) (holding that bankruptcy jurisdiction applies to the "debtor and his property" on the basis of the old bankruptcy statute)), because the current statute quite clearly says bankruptcy courts not only have jurisdiction over the debtor and his property in title 11 cases, 28 U.S.C. § 1334(e)(1), but also over matters "arising in" or "related to" Title 11 cases, § 1334(b).

- 10 -

More specifically, the Seventh Circuit's view that bankruptcy jurisdiction lapses once property leaves the estate cannot mean that jurisdiction always evaporates post-confirmation. The case the *Xonics* court cites to support its jurisdiction-lapsing theory says only that third parties who buy property from the bankrupt cannot be brought back into bankruptcy court. *In re Chicago, Rock Island & Pac. R.R. Co*, 794 F.2d 1182, 1186 (7th Cir. 1986); *see also In re Xonics*, 813 F.2d at 131. That rule does not mean that transferring property out of the estate—maybe to a post-confirmation trust, as in this case—destroys jurisdiction. Perhaps the best sign that it does not do so is the specific authorization the bankruptcy rules and statute give bankruptcy courts to issue post-confirmation orders to help consummate the plan or administer the estate. *In re Resorts Int'l, Inc.*, 372 F.3d at 164. What's more, it appears the Sixth Circuit may have already held that post-bankruptcy jurisdiction exists over core matters. *See In re Lowenbraun*, 453 F.3d 314, 321 (6th Cir. 2006). And the Court is aware of no principled reason to distinguish between post-confirmation core jurisdiction and post-confirmation related-to jurisdiction.

Though not as strident as the Seventh Circuit, other courts have similarly concluded that "related-to" jurisdiction narrows after plan confirmation. They explain it is technically impossible for post-confirmation claims to meet the ordinary test for pre-confirmation-related-to jurisdiction—whether the claims could have any conceivable effect on the estate—because the estate ceases to exist post-confirmation. *In re Resorts Int'l*, 372 F.3d at 165-66. While acknowledging that bankruptcy courts must have *some* post-confirmation jurisdiction because the bankruptcy statute and rules give them specific post-confirmation authority, these courts

- 11 -

nonetheless note that post-confirmation jurisdiction must narrow so as not to be "limitless" and "unending." *Id.* at 164, 167. One court elaborated that, after the bankruptcy court completes the plan, the reorganized debtor must be able to return to the "cold, cruel business world" without supervision from the bankruptcy court. *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001). Hence, these courts conclude that post-confirmation "related-to" jurisdiction exists only when there is a "close nexus" between the plaintiff's claim and the bankruptcy, *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005); *In re Resorts Int'l*, 372 F.3d at 166-67; *see also In re Thickstun Bros. Equip. Co., Inc.*, 344 B.R. 515, 521 (B.A.P. 6th Cir. 2006)[3]—typically including matters "that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *In re Resorts Int'l*, 372 F.3d at 167 .

But these holdings are also of no concern. To begin, it is unclear the suggested rule is really controlling here. There is good reason to be skeptical it is *truly* a jurisdictional, rather than prudential, rule. The bankruptcy jurisdictional statute makes no distinction between pre- and post-confirmation jurisdiction, *In re Boston Reg'l*, 410 F.3d at 106 ("On its face, section 1334 does not distinguish between pre-confirmation and post-confirmation jurisdiction."), and so it may be that these courts actually mean to say that judges should be more inclined to exercise

---

[3]      This Bankruptcy Appellate Panel's decision is not binding on this Court. *Phar-Mor, Inc. v. McKesson Corp.*, 534 F.3d 502, 507 (6th Cir. 2008) ("But, decisions by the Bankruptcy Appellate Panels are not binding on us[.]") (citing *Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007)); *see also Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) ("On the other hand, it must be conceded that BAP decisions cannot bind the district courts themselves."); *LBM Fin. LLC v. Shamus Holdings, Inc.*, No. 09-11668, 2010 WL 4181137, at *2 n.2 (D. Mass. Sept. 28, 2010).

permissive abstention in the post-confirmation context.  *See* 28 U.S.C. § 1334(c)(1) (authorizing permissive abstention).  What's more, the view that courts should be hesitant to exercise jurisdiction once the estate no longer exists has little purchase where, as here, the estate is replaced by a liquidating litigation trust, which essentially "represents the estate by assuming the obligations to prosecute the instant claims for the benefit of unsecured creditors."  *In re Railworks Corp.*, 325 B.R. 709, 719 (Bankr. D. Md. 2005).  Similarly, the assertion that courts should shun post-confirmation jurisdiction to avoid unending meddling in a reorganized debtor's affairs has no bearing in cases like this one where there is no reorganized debtor to toss back into the real world, but rather a litigation trust designed solely to carry out the court's order and wind up the extinct debtor's affairs.  *In re Boston Reg'l*, 410 F.3d at 106-07.

Even if the "close nexus" test does apply, however, the Court would still have jurisdiction.  While the "close nexus" courts have said that cases involving interpretation, implementation, consummation, execution, or administration of the confirmed plan are paradigmatic "close-nexus" matters, *In re Resorts Int'l*, 372 F.3d at 167, there is no reason to think that list is exhaustive.  The only conceivable basis for arguing that this list *is* exhaustive is that issuing orders to assist in consummation and administration of the plan is the only thing bankruptcy courts are specifically authorized to do after confirmation.  *In re Resorts Int'l*, 372 F.3d at 164.  But if those specific post-confirmation rules really represented the full measure of the bankruptcy court's post-confirmation authority, then one would expect them to limit not only courts' post-confirmation-related-to jurisdiction, but also courts' post-confirmation-core-arising-in jurisdiction.  *Cf. In re Gen. Media, Inc.*, 335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005) ("It should

- 13 -

also be noted that the distinction between core and non-core jurisdiction may not be particularly relevant after confirmation."). Yet even the "close-nexus" originators in the Third Circuit have held that bankruptcy courts have post-confirmation core-arising-in jurisdiction to do more than consummate the plan or administer the estate. *See In re Seven Fields Dev. Corp.*, 505 F.3d 237, 259-61 (3d Cir. 2007) (holding that bankruptcy court had core, arising-in jurisdiction over post-confirmation fraud and negligence claims against court-appointed accounting firm). As others have held, then, the specific rules authorizing bankruptcy courts to take steps to effectuate plan consummation and estate administration merely "channel" the bankruptcy court's post-confirmation jurisdiction, rather than abrogate it. *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999); *In re CF & I Fabricators of Utah, Inc.*, 150 F.3d 1233, 1237 (10th Cir. 1998).

If the "close-nexus" test does allow claims beyond those which involve interpretation, implementation, consummation, execution, or administration of the confirmed plan, the claims in this case clearly qualify. Recall that the liquidating trusts's "sole purpose is to wind up [the debtor's] affairs," liquidate its assets, "including Causes of Action assigned to it" under the plan, and pay the creditors, *In re Boston Reg'l*, 410 F.3d at 106; R. 10, Attach. 9 at 33, and by its "nature maintain[s] a connection to the bankruptcy even after the plan has been confirmed," *In re Resorts Int'l*, 372 F.3d at 167. And as another court observed, claims like the ones in this case are far more closely related to the bankruptcy than those found wanting in *Resorts International*, where the "close nexus" test was announced. *See In re Premium Escrow Servs., Inc.*, 342 B.R. 390, 399-400 (Bankr. D.D.C. 2006). In *Resorts International,* the trust sought to enforce claims

that belonged to it personally—a malpractice claim against an accounting firm it hired for post-confirmation conduct while serving the trust.  372 F.3d at 157-58.  Here, in contrast, the claims relate to pre-confirmation—even pre-petition—conduct, and the trust asserts these claims on behalf of the unsecured creditors, not itself.  Indeed, the claims against the A&M defendants were specifically assigned to the trust under the settlement agreement and confirmed plan.

And yet *even if* related-to claims *can* only share a "close nexus" with bankruptcy proceedings if they involve interpretation, implementation, consummation, execution, or administration of the confirmed plan, the plaintiff's claims here would qualify.  The trust is asserting claims that do not belong to it personally but were transferred to it as part of the bankruptcy plan—and so "the 'implementation' and 'execution' of the confirmed Plan are directly at issue."  *In re Refco, Inc. Secs. Litig.*, 628 F. Supp. 2d 432, 443 (S.D.N.Y. 2008).  Put another way, this trust is litigating on behalf of unsecured creditors, and so "the implementation of the payment of secured creditors . . . is precisely at issue, and falls squarely in the realm of limited jurisdiction that a bankruptcy court may hear."  *In re Railworks Corp.*, 325 B.R. at 723.  No matter how you slice it, then, this matter is "related to" a case arising under Title 11.

### C.   The plaintiff's procedural arguments for depriving this Court of jurisdiction are unpersuasive

Despite this, the plaintiff poses two more unconvincing theories for depriving this Court of jurisdiction.  First, he says that the bankruptcy court and parties failed to adequately preserve the bankruptcy court's jurisdiction over these claims by *specifically* listing them in the retention-of-jurisdiction section.    At best, the plaintiff argues, the plan generally reserved "such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible."  *See* R.

38 at 29.  But while it is true that some courts have held that bankruptcy courts must specifically preserve claims to maintain jurisdiction, *see, e.g., In re BWI Liquidating Corp.*, 437 B.R. 160, 166 (Bankr. D. Del. 2010), or in order for a debtor to have standing to bring them, *In re Nat'l Benevolent Ass'n of the Christian Church*, 333 F. App'x 822, 825-26 (5th Cir. 2009), the Sixth Circuit does not view specific retention as jurisdictional.  In *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 288-89 (6th Cir. 2001), the court rejected the argument that a bankruptcy court's statutory jurisdiction can be limited to what is reserved in the plan, noting that 11 U.S.C. § 1142 gives courts powers to enforce terms of a confirmed plan notwithstanding whether the court reserved jurisdiction in the plan.  Even if reservation *is* required, the court continued, the relatively *general* reservation in that case—"the [c]ourt shall further retain jurisdiction to hear . . . and determine all controversies relating to obligations of the Debtor incurred in the conduct of [its business] prior to confirmation"—sufficed.  *Id.*; *see also* Frank R. Kennedy and Gerald K. Smith, *Postconfirmation Issues:   The Effects of Confirmation and Postconfirmation Proceedings*, 44 S.C. L. REV. 621, 636-37 (1993).   Similarly, a Sixth Circuit bankruptcy appellate panel held that a limited retention of jurisdiction section "would not [] deprive the court of jurisdiction otherwise afforded by 28 U.S.C. § 1334" but might merely "condition or limit the court's *exercise* of post-confirmation jurisdiction."  *In re Thickstun Bros. Equip. Co., Inc.*, 344 B.R. 515, 522 (B.A.P. 6th Cir. 2006).

Rather than looking at the specificity with which the plan preserved claims as a question of jurisdiction, the Sixth Circuit instead views it as a question on the merits.  In *Browning v. Levy*, 283 F.3d 761, 772, 774 (6th Cir. 2002), the court held that, because confirmation of the

- 16 -

bankruptcy plan generally constitutes a "final judgment" with preclusive effect on "any issues raised or that could have been raised in the confirmation proceedings," the parties must specifically preserve any claims they wish to pursue after confirmation. So, in the Sixth Circuit's view, the specificity of claim reservation is a question about the res judicata effect of the plan—not a question about subject matter jurisdiction. *Cf. Rotello v. Clayton Homes of Delaware, Inc.*, No. 03-cv-573, 2005 WL 3987375, at *3 (E.D. Tenn. Nov. 29, 2005) ("An affirmative defense that is similar to *Rooker-Feldman*, although not typically considered an attack on subject matter jurisdiction, is *res judicata*.").

Nor is the plaintiff correct that the defendants' removal was incurably procedurally defective. He argues that Harold Sergent did not timely consent to removal of this case. But while the general removal statute requires defendants' unanimous consent to remove, *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201 (6th Cir. 2004), the bankruptcy removal statute does not. *In re WorldCom, Inc. Secs. Litig.*, 293 B.R. 308, 330 (S.D.N.Y. 2003); *see also In re Lazar*, 237 F.3d 967, 973 n.2 (9th Cir. 2001); *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660-61 (4th Cir. 1985). Instead, the statute says "*[a] party* may remove *any* claim or cause of action[.]" 28 U.S.C. § 1452(a) (emphasis added).

It is true that there is some question whether one party can remove an entire bankruptcy case, rather than just the claims against him, without the consent of his co-defendants. *See, e.g., Ret. Sys. of Ala. v. Merrill Lynch & Co.*, 209 F. Supp. 2d 1257, 1264 (M.D. Ala. 2002). As the *Retirement Systems* court explains, the statute says only that a party may remove any "claim" or "cause of action," whereas § 1441 permits removal of a "civil action." *Id.* But this does not

- 17 -

necessarily mean that a party cannot remove an entire civil action under the bankruptcy removal statute, § 1452.  It could just as easily mean that a party removing under § 1452 has the option to remove either discreet claims or an entire bankruptcy case.  *Anstine & Musgrove, Inc. v. Calcasieu Ref. Co.*, 436 B.R. 136, 141-42 (D. Kan. 2010).  And, more importantly, Harold Sergent has since joined in "removal of the entire case to federal court"—both orally in a hearing shortly after the notice of removal was filed and in writing.  R. 55.  The plaintiff says that this consent is untimely under 28 U.S.C. § 1446(b)'s thirty-day rule.  But 28 U.S.C. § 1653 broadly permits amendment of "[d]efective allegations of jurisdiction," and the Sixth Circuit has "expressed a reluctance to interpret statutory removal provisions in a grudging and rigid manner"—permitting parties to amend petitions for removal after the thirty-day period.  *Klein v. Manor Healthcare Corp.*, No. 92-4328, 92-4347, 1994 WL 91786, at *4-5 (6th Cir. March 22, 1994); *Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 968-69 (6th Cir. 1993); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 164 (6th Cir. 1993).  Hence, Harold Sergent has properly consented to removal of this entire case, and this Court therefore has jurisdiction over it.

## CONCLUSION

Having concluded that the Court has jurisdiction over this case, it is **REFERRED** to the bankruptcy court for further proceedings.  *See* 28 U.S.C. § 157.

This 12th day of January, 2011.

**Signed By:**

*Amul R. Thapar*

**United States District Judge**